UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**WARREN MILTON BROWN, JR.**                          **CIVIL ACTION**

**VERSUS**                                             **NO. 12-761-BAJ-RLB**

**COMMISSIONER OF**
**SOCIAL SECURITY**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1)(C), you have **14 days** from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on January 31, 2014.

                                                        _____
                                                        **RICHARD L. BOURGEOIS, JR.**
                                                        **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**WARREN MILTON BROWN, JR.**              **CIVIL ACTION**

**VERSUS**                                **NO. 12-761-BAJ-RLB**

**COMMISSIONER OF**
**SOCIAL SECURITY**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Warren Milton Brown, Jr. ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. § 405(g) denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act. (R. Docs. 1, 11).[1] This matter is before the undersigned on a referral from the United States District Judge. For the reasons given below, it is recommended that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal **DISMISSED with prejudice**.

**I.     PROCEDURAL HISTORY**

On April 5, 2011, Plaintiff filed an application for DIB, alleging disability commencing on October 21, 2008, due to anxiety, depression and degenerative disc disease. (Tr. 94-95, 111). After the agency initially denied Plaintiff's application (Tr. 57-60), Plaintiff requested an administrative hearing (Tr. 64). Plaintiff and his attorney attended an administrative hearing before the Administrative Law Judge (ALJ) on February 2, 2012. (Tr. 31-47).

---

[1] References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] at [page number(s)])". Reference to the record of administrative proceedings filed in this case is designated by "(Tr. [page number(s)])".

1

After reviewing the evidence and testimony, the ALJ issued his decision on March 15, 2012, concluding that Plaintiff was not disabled for purposes of the Act. (Tr. 13-30).

Plaintiff requested review of the ALJ's decision. On August 2, 2012, the Appeals Council denied review. (Tr. 5-8). Therefore, the ALJ's decision serves as the Commissioner's final decision for purposes of judicial review pursuant to 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). On November 5, 2012, Plaintiff was given a 30 day extension of time within which to file a civil action requesting court review. (Tr. 1-2). Plaintiff filed his complaint in federal district court on December 3, 2012, seeking review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). (R. Doc. 1).

## II.     STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices

or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

Moreover, "[p]rocedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). The *Mays* court explained that the "major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Mays*, 837 F.2d at 1364.

## III. ALJ'S DETERMINATION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In the ALJ's decision, the ALJ first found that Plaintiff met the insured status requirements of the Act and that Plaintiff had not engaged in substantial gainful activity since his

4

alleged onset date of October 21, 2008. (Tr. 18). At step two, the ALJ found that Plaintiff's obesity, depression and anxiety, as well as back and neck pain qualified as severe impairments under the Act. At step three, the ALJ concluded that Plaintiff's impairment or combination of impairments did not meet or medically equal a listed impairment. (Tr. 18-20).

Next, the ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following limitations: ability to sit/stand alternately at will but not leave the work station; occasionally climb ramps or stairs but never ladders, ropes or scaffolds; occasionally stoop, kneel, crouch, crawl and bend; occasionally perform overhead reaching bilaterally; avoid exposure to moving machinery and unprotected heights; ability to understand, remember, and carry out simple instructions; make judgments on simple work-related decisions; accept instructions and interact appropriately with the public, supervisors and workers in a routine work setting; respond appropriately to changes in the routine work setting; maintain concentration and attention for 2 hour segments of an 8 hour period; and complete a normal work week without excessive interruptions from psychologically or physically based symptoms. (Tr. 20-26).

In making this finding, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were partially credible. (Tr. 25). Considering Plaintiff's RFC and past relevant work (PRW) as a sales/service electronics electrician, the ALJ found that Plaintiff could not perform his PRW. (Tr. 26). The ALJ determined that Plaintiff had at limited education and could communicate in English, and considering he was 45 years old on his alleged disability onset date, classified him as a younger individual. (Tr. 26). Considering Plaintiff's age, education, PRW, and RFC, and with the assistance of vocational expert (VE) testimony, the ALJ concluded that jobs existed in significant

5

numbers in the national economy that Plaintiff could perform, specifically order clerk, surveillance system monitor, and charge account clerk. (Tr. 26-27). Accordingly, the ALJ found Plaintiff not disabled, and therefore not entitled to receive DIB during the relevant period. (Tr. 27).

## IV.  PLAINTIFF'S ALLEGATIONS OF ERROR AND COMMISSIONER'S RESPONSE

Plaintiff alleges that the ALJ was in error. (R. Doc. 11). He claims that the agency report by Dr. Lawrence Guidry was relied upon by the ALJ but is not part of the administrative record and therefore precludes meaningful judicial review. (R. Doc. 11 at 3). He also claims that the ALJ improperly rejected the opinion of his treating physician, improperly rejected Plaintiff's allegations without an appropriate credibility analysis, improperly used the Plaintiff's failure to lose weight as a basis to deny his claim, and that the ALJ's RFC determination was improper leading to improper reliance on vocational testimony. (R. Doc. 11 at 5-13).

The Commissioner responds that Dr. Guidry's report as discussed by the ALJ is part of the record. The Commissioner further asserts that the ALJ's evaluation of Plaintiff's treating physician is supported by substantial evidence, that the ALJ properly discounted the Plaintiff's credibility and that the RFC determination included all of the established limitations. (R. Doc. 9).

## V.  ANALYSIS

### A.  The Record Includes Dr. Guidry's Report

Plaintiff states that the agency report by Lawrence Guidry, Ph.D., dated May 25, 2011, was relied upon by the ALJ but is missing from the administrative record. (R. Doc. 11 at 3; Tr. 19). Contrary to Plaintiff's assertion, the report by Dr. Guidry that is referenced by the ALJ can be found as part of Exhibit 2A. (Tr. 49-56). The ALJ cited portions from sections titled "Case

6

Analyses" and "Medically Determinable Impairments and Severity." (Tr. 51-52).[2]  Therefore, Plaintiff's allegation of error on this ground is without merit.

### B. ALJ Properly Evaluated Dr. Broussard's Opinion

Plaintiff argues that the ALJ improperly rejected "the opinion of disability" of his treating physician, Thad S. Broussard, M.D.  (R. Doc. 11 at 5).  Dr. Broussard opined in February of 2012 that "this patient from a functional standpoint is very unlikely to be able to pursue gainful employment." (Tr. 208).  Similarly, in May of 2009, Dr. Broussard opined that Plaintiff "probably deserves the disability" and that he does not think the Plaintiff "would be able to hold down a job." (Tr. 207).[3]  Because these opinions relate to ultimate issues governing entitlement to benefits, they were entitled to no special significance. See 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine you are disabled.").  An ALJ need not justify a decision giving little weight to a physician's statement that a claimant is "disabled" or "unable to work," because such decisions are reserved for the Commissioner. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).  The Social Security definition of disability is a term of art regarding which medical doctors have no special expertise, and the issue of disability is one reserved exclusively to the Commissioner.  Consequently, the ALJ did not err in rejecting Dr. Broussard's ultimate issue opinions.

Dr. Broussard's opinion of medical issues, however, ordinarily is entitled to controlling weight.  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (*citing Barajas v. Heckler*, 738 F.2d

---

[2] Plaintiff indicated an inability to access Exhibit 2A using a link referenced in the Court Transcript Index. (R. Doc. 11 at 4 n.2).  The Defendant has informed the Court that it provided a copy of the documents contained in Exhibit 2A (Tr. 49-56). (R. Doc. 13 at 5 n.3).  These portions are contained in the certified copy of the record provided to the Clerk's Office but are not part of the electronic record that was filed by the Commissioner. (R. Doc. 8).  Specifically, transcript pages 48-56 are missing from the electronic version but are part of the bound, certified copy submitted to the Clerk's office.  Although these documents have been provided to Plaintiff by the Defendant, the Court has directed the Clerk's Office to file those pages electronically as well. (R. Docs. 14 and 15).

[3] The ALJ also noted that Dr. Broussard's opinion that the Plaintiff could not work was only mentioned in the letter to Plaintiff's attorney stating that from a functional standpoint it was unlikely he would be able to pursue gainful employment. (Tr. 24).

7

641, 644 (5th Cir. 1984)); *see also Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (*citing Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (internal citations omitted)); *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Medical opinion relates to the nature and severity of a patient's impairment. A treating physician's medical opinion may be rejected or discounted only for good cause.

Plaintiff cites at length from a letter dated February 13, 2012, from Dr. Broussard to Plaintiff's attorney. (Tr. 205-208). The letter comprises a recitation of Plaintiff's treatment history, including Plaintiff's subjective complaints. Those subjective complaints do not constitute medical opinions of Dr. Broussard and are likewise afforded no special weight. Plaintiff correctly points out that Dr. Broussard did diagnose certain objective evidence of degenerative spine changes, including "ostepophyte formation and consideration of ankylosing spondylitis." (Tr. 206). Dr. Broussard further outlines evidence of disc disease and treatment.

The ALJ did not, however, reject or otherwise ignore this information. These medical findings of Dr. Broussard were specifically considered and incorporated into the Plaintiff's RFC. (Tr. 22-26). The ALJ considered the Plaintiff's back and neck problems as well as his obesity and determined that he was limited to sedentary work with certain limitations.

The only specific opinion identified by Plaintiff, that the ALJ failed to adopt, is an opinion of Dr. Broussard that the Plaintiff could not bend or twist. As set forth in Dr. Broussard's letter, this is a subjective complaint of Plaintiff, not a medical opinion. (Tr. 205) ("He stated that he had been seen by physicians over the years who always focused on the low back. He stated it was interfering with his everyday activities. He was having difficulty with bending and twisting . . . .").

8

A physical exam in 2007, though, revealed "generalized tenderness" about the "cervical and thoracic region" with very restricted motion without spasm. (Tr. 164, 205). The record also shows, however, improvement since this difficulty was noted by Dr. Broussard. In May 2008, Plaintiff stated that "his low[er] back is really not bothering him any more" and that he was obtaining some relief with treatment (Tr. 162). Dr. Broussard consistently recommended symptomatic treatment that showed medical improvement (Tr. 161, 162), as well as therapy (Tr. 162), walking (Tr. 161), core strengthening (Tr. 161), and participation in a weight loss program (Tr. 161, 162).

Even so, the ALJ specifically noted that Plaintiff reported these difficulties. (Tr. 21) (in 2007 "he reported difficulty with bending and twisting" and "very restricted motion" and in 2008 "he reported still having difficulty."). Limitations attributable to these difficulties can be found in the RFC. (Tr. 20) (sedentary work and "occasionally perform overhead reaching bilaterally"). As such, there is no error in the weight the ALJ afforded the records provided by Dr. Broussard.

### C.     ALJ's Credibility Determination

The ALJ conducted a proper credibility analysis of Plaintiff's individual statements about the symptoms of his impairments and their functional effects. First, the ALJ considered the complaints of pain and functional limitations of the Plaintiff. (Tr. 25) ("The claimant's testimony regarding daily activities, restrictions and symptoms has been considered" and "claimant describes daily activities that are fairly limited"). At the hearing, the Plaintiff explained that based on his pain, a typical day involved sitting in a recliner, laying down, elevating his feet and using a heating pad. (Tr. 37). He could "move around some." *Id*.

The ALJ concluded that "[a]fter careful consideration of the evidence, the [ALJ] finds that the claimant's medically determinable impairments could reasonably be expected to cause

9

the alleged symptoms; however, claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the RFC. (Tr. 21).

In assessing credibility, the ALJ must consider the entire record, including medical signs and laboratory findings and statements by the claimant and his or her treating or examining sources concerning the alleged symptoms and their effects. 20 C.F.R. § 404.1529(c)(1). Additionally, the regulations provide a non-exclusive list of factors that the ALJ must consider. See 20 C.F.R. § 404.1529(c) (2011).[4] Nevertheless, the Fifth Circuit has held that the ALJ is not required to follow "formalistic rules" in assessing credibility, and the ALJ must articulate his or her reasons for rejecting a claimant's subjective complaints only "when the evidence clearly favors the claimant." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). The above factors and the *Falco* case were specifically cited and considered by the ALJ. (Tr. 24).

The ALJ considered Plaintiff's testimony but noted that the existence of pain is a completely subjective phenomenon and must be weighed against the objective medical evidence and diagnoses. (Tr. 25). Ultimately, the mere existence of pain is not an automatic ground for disability, and subjective evidence of pain does "not take precedence over conflicting medical evidence." *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989). Likewise, an individual's

---

[4] These factors include:
   (i) Your daily activities;
   (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
   (iii) Precipitating and aggravating factors;
   (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
   (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
   (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
   (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

statements regarding pain and other symptoms alone are not conclusive evidence of disability and must be supported by objective evidence of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Harper*, 887 F.2d at 96 (quoting 42 U.S.C. § 423(d)(5)(A)).

On appeal, Plaintiff points to no objective medical evidence that supports pain and resulting impairment at the level complained. The ALJ noted that the MRI of Plaintiff's lumbar spine on April 3, 2008 noted at L4-5 there was no disc herniation, canal stenosis or neural foramen. (Tr. 21). At L5-S1 there was also no evidence of herniation. (Tr. 22). The cervical MRI conducted that same day either noted that there was no spinal or foramen stenosis or that in areas where there was evidence of stenosis, CSF within the root sleeves was visible. (Tr. 22). Further medical evaluations and treatment included only medication and therapy.

The ALJ further noted that even if Plaintiff's daily activities were as limited as he stated, those limitations are difficult to attribute to the "relatively minimal" medical evidence. (Tr. 25). In addition to symptomatic treatment for pain, the ALJ noted a significant number of instances where the medical professionals treating Plaintiff recommended weight loss, a walking program, and core strengthening. The ALJ also noted that this conservative treatment resulted in improvement as reported by Plaintiff. (Tr. 25). Recommendations by treating medical personnel involving increased physical activity and weight loss, as well as positive results when followed by the Plaintiff, are not consistent with the disabling limitations claimed by Plaintiff.

The record also supports a conclusion that Plaintiff's treatment was sparse and conservative, thereby weighing against a finding of disabling pain. 20 C.F.R. § 404.1529(c)(3). *See Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir. 1990) ("Pain constitutes a disabling

condition under the Social Security Act only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.") (quotations omitted).

The Court finds that substantial evidence supports the ALJ's determination that claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the RFC.

### D. ALJ's Residual Functional Capacity Assessment

Plaintiff's remaining allegations of error go to the ALJ's determination of the residual functional capacity ("RFC") of the Plaintiff and subsequent VE testimony based on that determination. Plaintiff claims that the ALJ used improper grounds in making his determination in that the ALJ "used the claimant's failure to lose weight as a basis to deny the claim." (R. Doc. 11 at 11). The record does not support a conclusion that Plaintiff's claim was denied for failing to lose weight. The Plaintiff's claim was denied because considering his age, education, work experience and residual functional capacity, there are jobs that exist in sufficient numbers in the national economy that he can perform, therefore resulting in a finding that he is not disabled. (Tr. 26-27). Plaintiff's failure to participate in a weight loss program or other form of physical activity as instructed by his physicians, rather, was properly used to assess his credibility as referenced above.

The ALJ likewise did not discount Plaintiff's obesity in determining the applicable RFC. The RFC was "based on the claimant's neck and back problems as well as his obesity" and was part of the conclusion that Plaintiff was limited to sedentary work with limitations. (Tr. 26). While noting the fact that Plaintiff has not attempted to lose weight despite being instructed to do

so by his doctors, certain limitations were still incorporated by the ALJ, thereby "giving the claimant every consideration." (Tr. 26).[5]

Because the ALJ did not deny benefits based on Plaintiff's failure to lose weight, and the ALJ considered Plaintiff's obesity in determining the appropriate RFC, Plaintiff's appeal on this ground should be denied.

Plaintiff's final allegation of error is that the ALJ failed to accurately advise the VE of all of Plaintiff's restrictions, thereby resulting in vocational testimony that was insufficient to meet the Commissioner's burden of proof at step five.  The ALJ determined that Plaintiff had the residual functional capacity "to perform sedentary work . . . with the ability to sit/stand alternately at will but would not leave the work station . . . ." (Tr. 20).  Plaintiff does not challenge the ALJ's finding that he needs to be able to change positions at will.  Rather, Plaintiff asserts that "the need to alternate sitting and standing was not properly conveyed to the vocational expert." (R. Doc. 11 at 12).

In *Bowling v. Shalala*, the Fifth Circuit articulated the test for determining when a defective hypothetical question to a vocational expert will produce reversible error:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.

36 F.3d 431, 436 (5th Cir.1994).

In the ALJ's hypothetical question, the VE was asked to assume that the Plaintiff had to find employment "where he is allowed to sit, stand alternatively at will but would not leave the

---

[5] If the ALJ had found Plaintiff disabled, then failure to follow the treatment regimen prescribed by his physician could result in his inability to receive benefits. *See Johnson v. Sullivan*, 894 F.2d 683, 685 n.4 (5th Cir. 1990).

work station . . . ."). (Tr. 43). The hypothetical did not provide a specific amount of time that Plaintiff would need to sit or stand. Rather, it provided that he be allowed to sit or stand "alternatively at will." The VE noted that this would put him "into the sedentary range." (Tr. 44). Sedentary work requires standing and walking no more than 2 hours of an 8 hour workday and sitting approximately 6 hours of an 8 hour workday. The VE's opinion, therefore, was based on a hypothetical that Plaintiff be able to sit or stand alternatively at will, but subject to the durational limitations associated with sedentary work. This hypothetical incorporated "all disabilities of the claimant recognized by the ALJ." *Bowling*, 36 F.3d at 436.[6]

Plaintiff also asserts that the ALJ failed to accurately advise the VE as to the claimant's ability to maintain concentration, persistence and pace. (R. Doc. 11 at 12). Plaintiff had a history of treatment for depression and anxiety. The ALJ noted that he saw Dr. Ferrara in February of 2008 complaining of anxiety, and in February of 2010 reporting depression. (Tr. 19). At the consultative examination on May 12, 2011, performed by Dr. Stewart, the claimant reported depression and anxiety. (Tr. 175).

Based on these reports, in his determination at steps two and three, the ALJ noted that Plaintiff had "moderate" difficulties with concentration, persistence or pace as opposed to "marked." (Tr. 20). The ALJ's findings at step two and three, however, are not his RFC determination (Tr. 20) ("The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process."). Plaintiff's argument that the ALJ's

---

[6] Furthermore, in accordance with *Bowling*, Plaintiff's attorney was "afforded the opportunity to correct deficiencies in the ALJ's question" on cross examination of the vocational expert. (Tr. 45-46). During his questioning, Plaintiff's counsel incorporated a limitation of having to "spend at least six out of eight hours a day in a reclined position with both legs elevated." (Tr. 45). Plaintiff's hypothetical did not mention or suggest any defect in the ALJ's question regarding the frequency or duration required of alternating between sitting or standing. Instead, the Plaintiff's hypothetical incorporated limitations the ALJ had found not credible.

14

evaluation at step three necessarily supports a decreased RFC determination is improper. *See Bordelon v. Atrue*, 281 F. App'x 418, 422 (5th Cir. 2008) (noting that district court properly explained that diagnosed impairments regarding limitations in concentration, persistence and pace are not equivalent to "functional limitations" on ability to work).

Regardless, to the extent that the moderate difficulties with concentration, persistence or pace equate to functional limitations, the hypothetical to the VE adequately addressed those limitations. Plaintiff's RFC included limitations beyond sedentary work and physical limitations regarding sitting and standing and specifically incorporated Plaintiff's depression and anxiety into the RFC determination. "Based on the claimant's depression and anxiety, he would have the ability to understand, remember and carry out simple instructions; make judgments on simple work-related decisions; accept instructions and interact appropriately with the public; supervisors and workers in a routine work setting . . . ." (Tr. 26).

The ALJ's hypothetical question to the VE adequately reflected those same limitations. (Tr. 43-44); *see also Bordelon*, 281 Fed. App'x at 422-23 (finding that ALJ's hypothetical adequately incorporated limitations regarding concentration, persistence and pace by specifying, among other things, ability to carry out simple instructions). The Fifth Circuit also noted in *Bordelon* that claimant "failed to show any prejudice arising from the hypothetical question's omission of her 'moderate' concentration, persistence, and pace limitations." *Id.* Likewise, no prejudice can be found here or has been shown by Plaintiff. Finally, Plaintiff's representative was afforded an opportunity to suggest any defects in the ALJ's question and did not suggest any inclusion regarding these limitations, such that the hypothetical was proper for that reason as well. *Id.* at 423 n.7 (hypothetical question was proper because Plaintiff was afforded opportunity to correct any deficiencies and chose not to).

The Court finds that the ALJ's RFC determination was supported by substantial evidence, the hypothetical reasonably incorporated all disabilities recognized by the ALJ, and the claimant or his representative was afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question.

## V.     RECOMMENDATION

For the reasons given above, **IT IS RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana on January 31, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**